**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**BRYAN G.,**

      **Plaintiff,**

                                      Case No. 1:19-cv-20361
     v.                                   Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On February 4, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since December 1, 2013. R.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

725–55. The applications were denied initially and upon reconsideration. R. 635–46. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 667–68. Administrative Law Judge ("ALJ") Paul R. Armstrong held a hearing on September 10, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 508–69. In a decision dated October 9, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2013, the alleged disability onset date, through the date of the decision. R. 492–501. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 24, 2019. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 20, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[2] On that same day, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

3

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 28 years old on his alleged disability onset date and he met the insured status requirements of the Social Security Act through December 31, 2018. R. 495, 500. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 1, 2013, his alleged disability onset date, and the date of the administrative decision. R. 495.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: left shoulder degenerative joint disease, degenerative disc disease, affective disorder, and anxiety. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 495–96.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional exertional and non-exertional limitations. R. 496. However, the ALJ also found that this RFC did not preclude the performance of Plaintiff's past relevant work as a warehouse worker. R. 499–500.

Although the ALJ found that Plaintiff could perform his past relevant work, the ALJ proceeded to step five and found, alternatively, that a significant number of jobs–*i.e.*, approximately 195,500 jobs as a small parts assembler; approximately 29,800 jobs as an electronics worker; and approximately 313,600 jobs as an inspector / hand packager–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 500–01. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2013, his alleged disability onset date, through the date of the administrative decision. *Id.*

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

**IV.   DISCUSSION**

Plaintiff challenges the ALJ's consideration of multiple medical opinions including, *inter alia*, the opinion of his treating psychiatrist, Isiaka Bolarinwa, M.D. *Plaintiff's Brief*, ECF No. 13, pp. 17, 19–25. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," and one sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the

ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion

9

outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).[3] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

---

[3] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017); 20 C.F.R. § 416.927 (same), and SSR 96-2p was rescinded. Plaintiff filed his claims on February 4, 2016.

Here, on August 20, 2018, Dr. Bolarinwa, Plaintiff's treating psychiatrist, completed a five-page form entitled "Treating Source Statement – Psychological Conditions" ("Statement"). R. 1306–10. In that Statement, Dr. Bolarinwa indicated that she is a board-certified psychiatrist and that she first treated Plaintiff on January 31, 2018. R. 1306. Dr. Bolarinwa diagnosed bipolar and related disorders and panic disorder; Plaintiff's prognosis was guarded. *Id*. In support of these diagnoses, Dr. Bolarinwa reported that Plaintiff experienced nightmares, intrusive thoughts, and derealization. *Id*. His symptoms and limitations first appeared when he was seven years old. *Id*. The signs and symptoms associated with Plaintiff's conditions include disturbance of mood accompanied by full or partial depressive syndrome; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes; and anxiety that is limited to the presence of a particular object or situation, or to resisting the obsessions or compulsive disorder. *Id*. Referring to clinical findings and mental status examinations, Dr. Bolarinwa noted that Plaintiff's "mood is depressed; affect is anxious; thought process is circumstantial. Pt has passive death wish. [H]e is oriented to time and space. Insight & Judgment is poor." R. 1307. According to Dr. Bolarinwa, Plaintiff was markedly limited in his ability to understand, remember, or apply information due to his intrusive thoughts and anxiety that interfere with normal functioning. R. 1308. Plaintiff was markedly limited in his ability to interact with others as reflected in Plaintiff being "very socially isolative." *Id*. Plaintiff was also markedly limited in his ability to concentrate, persist, or maintain pace and his long-term and short-term memory were markedly limited because he is easily distracted and unable to concentrate. R. 1308–09. Dr. Bolarinwa further found that Plaintiff was markedly limited in his ability to remember locations and work-like procedures, understand and carry out very short and simple instructions, and understand and carry out detailed but uninvolved written or oral

11

instructions. R. 1309. Plaintiff was also moderately limited in his ability to adapt or manage himself due to his poor concentration. R. 1308.

Dr. Bolarinwa opined that Plaintiff could maintain attention and concentration for less than fifteen minutes before needing redirection or requiring a break; he was unable to maintain regular attendance and be punctual within customary tolerances; but he required enhanced supervision. R. 1309. Dr. Bolarinwa also opined that Plaintiff was severely impaired in his ability to socially interact with others and was therefore unable to work appropriately with the general public, co-workers, or supervisors. R. 1309–10. In particular, Dr. Bolarinwa noted that Plaintiff required praise and positive reinforcement from supervisors in order to handle stress and emotion. R. 1310. According to Dr. Bolarinwa, Plaintiff lacked the ability to maintain socially appropriate behavior or to respond appropriately to changes in work settings. *Id*. Finally, Dr. Bolarinwa opined that Plaintiff would likely be off-task more than 25% of the time in a typical workday and was likely to be absent from work more than four days per month. *Id*.

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform medium work subject to certain additional exertional and non-exertional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) where the claimant lifts or carries 50 pounds occasionally and 25 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday. The claimant can have no public contact work, and no more than occasional contact with supervisors and co-employees.

R. 496. In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Bolarinwa's opinions, reasoning as follows:

> In third party reports, the claimant's mother found the claimant is limited in memory, completing tasks, concentration, understanding, and following

12

> instructions (Exhibit 6E, Exhibit 9E). Dr. Lawrence Mintzer Ph.D. found that the claimant has moderate to severe psychological limitations (Exhibit 6F). Dr. Alan Gordon Ed.D. found the claimant would be unlikely to work at home or away from home (Exhibit 8F). Dr. Isiaka Bolarinwa M.D. found marked mental limitations (Exhibit 14F). Their opinions are contradicted by cognitive testing that showed average to low average abilities (Exhibit 8F). Their opinions are contradicted by improved mental status examinations with sobriety, as the claimant often showed a euthymic mood (Exhibit 11F). Therefore, their opinions are granted little weight.

R. 499.

Plaintiff challenges, *inter alia*, the ALJ's consideration of Dr. Bolarinwa's opinions, arguing that the ALJ failed to consider the factors under 20 C.F.R. § 404.1527(c), including her status as a treating source, the fact that she actually examined Plaintiff, her specialty in psychiatry, and the supportability of the opinion. *Plaintiff's Brief*, ECF No. 13, pp. 19–21. Plaintiff also challenges the sufficiency of the reasons given for discounting Dr. Bolarinwa's opinion. *Id.* at 21–25. Specifically, Plaintiff contends that the ALJ erred in relying on his own lay analysis in finding that normal to low average scores on cognitive testing contradict Dr. Bolarinwa's findings of marked limitations in mental functioning. *Id.* at 21–22. Plaintiff also challenges the ALJ's reference to findings of "a euthymic mood" as sufficient to contradict findings of marked impairments in Plaintiff's mental functioning. *Id.* at 22. In this regard, and although Plaintiff acknowledges that the record does include some "normal" findings, Plaintiff complains that the ALJ cherry-picked these findings while ignoring a "multitude of mental status examinations or reports" that reflected a depressed mood or otherwise abnormal findings. *Id.* at 22–24 (citing multiple pages in the record). In response, the Commissioner argues that the ALJ properly considered Dr. Bolarinwa's opinions in accordance with the appliable regulations and that substantial evidence in the record supports the ALJ's assessment. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 13–20.

Plaintiff's arguments are well taken. It is true that an ALJ, in evaluating the medical opinions in the record, "need not explicitly discuss each factor in his decision." *O'Neill*, 2019 WL 413539, at *6. However, the ALJ must explain his evaluation of the medical evidence sufficiently to permit the Court to meaningfully review whether his reasoning complies with the regulation's standards. *Samah*, 2018 WL 6178862, at *5. Here, the ALJ neither discussed nor referred to Dr. Bolarinwa's treatment notes and therefore did not even implicitly acknowledge Dr. Bolarinwa's status as Plaintiff's treating provider or specialization in psychiatry. *See generally* R. 495–99. This Court cannot determine whether the ALJ considered the regulatory factors. *See Williams v. Berryhill*, No. CV 17-0146, 2018 WL 6990917, at *12 (E.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, No. CV 17-0146, 2019 WL 158301 (E.D. Pa. Jan. 10, 2019) ("Here, the court has no way of knowing if the ALJ considered the § 416.927(c) factors, or whether any of those factors impacted the ALJ's decision to give no weight to [treating psychiatrist] Dr. Levinson's opinion."); *Ortiz v. Berryhill*, No. CV 16-03591, 2017 WL 1499250, at *8, n.10 (E.D. Pa. Feb. 28, 2017), *report and recommendation adopted sub nom. Ortiz v. Colvin*, No. CV 16-3591, 2017 WL 1477666 (E.D. Pa. Apr. 25, 2017) ("Here, the ALJ failed to provide support for his determination to assign Dr. Hazbun's opinion limited weight. The opinion is bereft of any reference to the factors or any discussion of Ortiz's extensive treatment with Dr. Hazbun. This does not suffice under the regulations."). *Cf. Dombrowski v. Comm'r of Soc. Sec.*, No. 16-153, 2017 WL 3922882, at *2 (W.D. Pa. Sept. 7, 2017) ("An ALJ is not required to discuss each of the factors identified in Section 404.1527, so long as there is sufficient evidence that the ALJ considered those factors.") (citations omitted).

Next, as noted, the ALJ discounted Dr. Bolarinwa's opinions of marked mental limitations simply because Plaintiff's cognitive testing revealed average to low average

intelligence and because his mood was characterized as "euthymic" during some mental status examinations. R. 499. In the view of this Court, the ALJ's findings in this regard reflect his improper speculation and lay medical judgment for which the ALJ is wholly unqualified. *See Morales*, 225 F.3d at 317 ("an ALJ may not make speculative inferences from medical reports") (internal quotation marks and citations omitted); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) ("An ALJ may not make purely speculative inferences from medical reports.").

The Court also notes with concern the fact that the ALJ's reference to a "euthymic" mood was based only on "Exhibit 11F." R. 1022–1159. However, that exhibit also contains contrary evidence, which the ALJ apparently ignored. *See*, *e.g.*, R. 1023–24 (indicating that, although Plaintiff had a euthymic mood, his impulse control, judgment, and insight were poor and he "does not have the energy to meet obligations[,]" "experiences panic attacks that last from ten minutes to a hour. Pt has low self-esteem and questions his potential in life. Pt only has a few friends he stays in contact with and [] only speaks with his mother" and "cannot handle life obligations and relationships due to depressions and anxiety"), 1045–46 (reflecting a euthymic mood, but that Plaintiff "cannot handle life obligations and relationships due to depression and anxiety"), 1057–58 (same), 1103–04 (same), 1107 (same). *See Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *DeJesus v. Colvin*,

15

No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation."); *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125, 2014 WL 6800613, at *10 (D.N.J. Dec. 2, 2014) ("An ALJ cannot rely on portions of documents from the record without also refuting 'the statements made therein that contradict his findings.'") (quoting *Cadavid v. Comm'r of Soc. Sec.*, No. CIVA 12–7214, 2014 WL 839453, at *9 (D.N.J. Feb. 26, 2014)).

Finally, the Court rejects the Commissioner's suggestion that other evidence in the record supports the ALJ's consideration of Dr. Bolarinwa's opinions. The ALJ did not rely on this rationale in evaluating these opinions, nor did the ALJ articulate this basis for assigning little weight to Dr. Bolarinwa's Statement. R. 499. The Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the opinions of the treating psychiatrist, Isiaka Bolarinwa, M.D. Remand is appropriate, moreover, even if further examination of those opinions again persuades the Commissioner that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[4]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Bolarinwa's opinion, the Court does not consider those claims.

**IT IS SO ORDERED.**


Date:  July 30, 2021                             *s/Norah McCann King*
                                                  NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE